UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L. BONNIE KEYS,

       Plaintiff,

v.                                       Case No. 1:04-CV-633
                                       Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on July 26, 1949, has an associate's degree in "occupational therapy assisting" and is a certified nurse's aide (AR 44, 60, 242).[1] Plaintiff stated that she became disabled on January 1, 2001 (AR 44). She had previous employment as a nurse aide/resident care aide (AR 63-64), and identified her disabling conditions as carpal tunnel syndrome, degenerative disc disease, neck, shoulder and hip pain, weakness, difficulty with lifting, gripping, pushing, and pulling, and dropping things (AR 54). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on October 24, 2003 (AR 17-24). This decision, which was later approved

---

[1] Citations to the administrative record will be referenced as (AR "page #").

by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on January 1, 2001 (AR 23). Second, the ALJ found that she suffered from severe impairments of cervical spondylosis, myofascial pain syndrome and migraine headaches (AR 23). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23). The ALJ decided at the fourth step that plaintiff had the residual functional capacity to perform light work with a sit-stand option (AR 23). The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 23).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 23). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in Michigan: teacher's aide (3,000 jobs); inspector (6,000 jobs); and general office clerk (12,000 jobs) (AR 24). In addition, the ALJ found that plaintiff's acquired skills in her past work that are transferable to semi-skilled jobs within her residual functional capacity, such as patient sitter, dental assistant/receptionist, medical assistant/receptionist, hospital admitting clerk and information clerk (AR 24). The ALJ also found plaintiff's allegations regarding her limitations were not totally credible (AR 23). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 24).

### III. ANALYSIS

Plaintiff raises four issues on appeal.

**A.     Whether or not the ALJ's finding at step 2 of the sequential evaluation regarding the severity of the claimant's medical problems is supported by substantial evidence or is contrary to the law?**

The ALJ found that plaintiff suffered from severe impairments of cervical spondylosis, myofascial pain syndrome and migraine headaches (AR 23). Plaintiff contends that the ALJ erred by failing to find that she suffered from a severe impairment of fibromyalgia. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.*

In the present case, the ALJ found that plaintiff suffered from three severe impairments and proceeded to step three of the sequential evaluation. While the ALJ did not find that plaintiff's fibromyalgia was a severe impairment, he reviewed plaintiff's limitations, noting that plaintiff was neurologically intact, that she had no significant musculoskeletal findings, and that her physicians noted nothing more than mildly limited motion and some tenderness (AR 21).

Accordingly, the ALJ's failure to find that plaintiff suffered from a severe impairment of fibromyalgia is not error requiring reversal. *See Maziarz*, 837 F.2d at 244.[2]

> **B.     Whether or not the ALJ's finding that the claimant's testimony was not totally credible is supported by substantial evidence or is contrary to the law?**

Next, plaintiff contests that the ALJ's finding that she was not a completely credible witness. An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

The ALJ stated that he evaluated plaintiff pursuant to 20 C.F.R. § 404.1529 ("How we evaluate symptoms, including pain") (AR 21). Section 404.1529 includes seven factors to be considered: the claimant's daily activities; the location, duration, frequency, and intensity of pain or

---

[2] In this regard, plaintiff disputes the ALJ's finding that the medical evidence failed to support a diagnosis of fibromyalgia. The court notes that Girish Juneja, M.D. and Stephen Winston, M.D. concluded in October 2002 and June 2002, respectively, that plaintiff suffered from fibromyalgia (AR 201, 210). Even if the ALJ's finding was in error regarding the fibromyalgia diagnosis, such an error was harmless. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988).

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and, other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

As an initial matter, the ALJ observed the paucity of objective medical evidence documenting the existence of any medically determinable impairment that could cause the alleged severe, disabling symptomatology (AR 21). The ALJ observed that other than plaintiff's carpal tunnel release surgery in February 1991, she had no surgical procedures for her neck, shoulder, hip or other complaints (AR 22).  The ALJ noted that while the March 2001 MRI of plaintiff's cervical spine indicated only "mild to moderate" defects and the July 2001 x-ray of her lumbosacral spine indicated facet arthrosis, she had few other clinical findings (AR 21). Although plaintiff complained of pain in the left hip area, an x-ray of her hip and pelvis were completely normal (AR 21).

The ALJ stated that plaintiff's medication does not include "any real strong prescription analgesics" (AR 22).  In August 2002, Girish Juneja, M.D., prescribed plaintiff 500 mg of Vicodin, four times a day (AR 213).[3]  Yet, on that same day, the doctor observed that plaintiff "fluctuates in her presentation" and there are times when she stops taking "all the medication" (AR 213).  On April 25, 2003, Dr. Chin prescribed plaintiff 100 mg of Vicodin, but this did not include any refills (AR 218).

---

[3] Vicodin is used to relieve moderate to moderately severe pain. Physician's Desk Reference at 1366 (52nd ed. 1998).

Plaintiff points out that she had a number of invasive procedures (including epidural injections, injections at trigger points, medial branch blocks) performed by Dr. Winston on: April 5, 2001; May 17, 2001; June 14, 2001; July 24, 2001; August 28, 2001; February 19, 2002; March 19, 2002; June 12, 2002; July 2, 2002; and August 12, 2002 (AR 152, 155, 160, 164, 167, 200-02, 206-07). However, the court notes significant gaps in plaintiff's medical records. There are no records of treatment by Dr. Winston from August 12, 2002 through plaintiff's hearing on June 3, 2003 (AR 229). In October 2002, plaintiff's physician, Hans Chin, M.D., noted that he would see plaintiff in May 2003 after she returned from Florida (AR 219). The court notes that there are no medical records reflecting treatment in Florida.

The ALJ relies in large part on plaintiff's daily activities, finding that these were "not the activities and abilities of an individual who is completely unable to engage in any substantial gainful activity and clearly reflect the ability to perform the limited work activities as found by the undersigned" (AR 22). Daily activities questionnaires indicate that plaintiff is able to take care of her personal needs, spends time doing household chores, washing laundry, cooking, gardening and sewing (AR 22, 75-85). Plaintiff travels to Florida with her husband in the wintertime, travels to visit her grandchildren, demonstrated the ability to carry an oversized handbag at the hearing and showed excellent mobility at the hearing (AR 22, 235-42). Her daily activities questionnaire from December 2001 indicated that she does all meal preparation at her house, does household cleaning and some yard work, and shops for groceries, clothing and gifts (AR 22, 81-84). Plaintiff also reads and does some fishing (AR 22, 83). Contradictions exist between plaintiff's claims that she suffers from a disabling condition and other evidence in the record. Accordingly, the ALJ could discount plaintiff's claims regarding the extent of her limitations.

### C. Whether the ALJ's assessment of claimant's residual functional capacity is supported by substantial evidence or is contrary to the law?

Next, plaintiff contends that the ALJ improperly rejected the functional limitations as set forth by her treating physicians, Drs. Chin and Juneja. A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

In forms entitled "pain questionnaire," "rest questionnaire," and "medical assessment of ability to do work-related activities" dated June 24, 2002, Dr. Chin indicated that plaintiff's pain interfered with her ability to maintain attention and concentration "67% to 100% of the time," that plaintiff could lift no more than 5 pounds, and that "patient is and will be totally disabled" (AR 91-94). Dr. Chin also stated that plaintiff could not stand at all during an 8-hour workday and that she could sit 1 hour in an 8-hour workday and 2 hours without interruption (AR 91).

In a form entitled "medical assessment of ability to do work-related activities" dated June 24, 2002, Dr. Juneja indicated that plaintiff could lift no more than 5 pounds, stand and/or walk 2 hours in an 8-hour workday (30 minutes without interruption), sit 2 hours in an 8-hour workday (1/2 hour without interruption), occasionally climb, kneel, crouch, stoop and balance and never crawl (AR 114-15). The doctor felt that plaintiff's handling was limited, that her ability to push/pull was limited to 5 pounds, but that she had no limitations to reaching, feeling, seeing, hearing or speaking (AR 115).

The ALJ assessed these opinions as follows:

> The undersigned has considered these doctors' opinions about the extent of the claimant's limitations under the guidelines set out in section 404.1527 of Regulations No. 4. In doing so, it must be concluded that these opinions are not credible, reliable or controlling in anyway. The opinions were given on forms sent to the doctors by the claimant's representative, that were designed to suggest answers in support of the disability claim, and did not require the doctors to demonstrate consideration of all the relevant facts. The doctors' opinions are inconsistent with the overall evidence of record as discussed above and are not even supported by the reports of these doctors, themselves. For example, while Dr. Chin suggests that the claimant can sit for only one-half hour without interruption, and for only two hours in a workday, the claimant clearly demonstrated an ability to do more than this while at the hearing. Such limitations are also belied by the claimant's own admitted activities.

(AR 22).[4]

Nevertheless, the record supports the ALJ's reasons given for discounting the doctors' restrictions. The limited records of Drs. Chin and Juneja do not contain clinical findings to support these extreme restrictions. In addition, other evidence, specifically the ALJ's observations and the claimant's own activities, are inconsistent with these restrictions. Accordingly, the ALJ could properly discount the limitations as set forth by Drs. Chin and Juneja.

> **D. Whether or not the ALJ's finding that the claimant can perform substantial gainful activity is supported by substantial evidence or is contrary to the law?**

Next, plaintiff contends that the ALJ's finding that she can perform substantial gainful activity is unsupported by the record. Plaintiff raises two claims. First, she contends that she is disabled under the medical vocational guidelines. Second, plaintiff contends that the ALJ posed defective hypothetical questions to the VE.

> **1. Medical vocational guidelines**

The vocational expert (VE) testified that plaintiff had certain transferable skills, which included keeping accurate records, charting patient information and social health care knowledge (AR 263-65). Plaintiff contends that her skills were not transferable and that given her age, education and work background, she should have been found disabled pursuant to the Medical Vocational Guideline 201.14. Plaintiff's Brief at 18. Plaintiff contends that these abilities are aptitudes rather than transferable skills.

The medical-vocational guidelines or grids "take account only of a claimant's

---

[4] The ALJ's decision contains an error with respect to Dr. Chin's statement. The limitations attributed to Dr. Chin are actually the limitations set forth by Dr. Juneja.

11

'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *See Taylor v. Commissioner of Social Security*, No. 98-4504, 1999 WL 1073656 at * 1 (6th Cir. Nov. 17, 1999); *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). The grids only apply to a claimant when all factors (i.e., age, work experience, physical ability and education) coincide with the elements as set forth in the grids. *See Taylor*, 1999 WL 1073656 at *1; *Kirk v. Secretary of Health and Human Servs.*, 667 F. 2d 524, 533-35 (6th Cir. 1981). When the findings of fact coincide with those four factors, the grids direct a conclusion as to disability or non-disability and vocational testimony is not required. *See Ziegler v. Sullivan*, No. 89-1708, 1990 WL 6954 at *5 (6th Cir. Feb. 1, 1990); *Kirk*, 667 F. 2d at 528-30.

The rule at issue, 201.14, applies to individuals who have a maximum residual functional capacity of sedentary work and directs a finding of "disabled" for a person meeting the following requirements: is closely approaching advanced age; is a high school graduate or more; and, has previous work experience of skilled or semi-skilled work with the skills not transferable. 20 C.F.R., Part 404, Subpt. P, App. 2, Rule 201.14. As an initial matter, plaintiff is addressing the wrong rule. Rule 201.14 applies only to a person with a maximum residual functional capacity of sedentary work. Because the ALJ found that plaintiff could perform light work, Rule 201.14 does not apply. Assuming that plaintiff had no transferable skills, the appropriate rule for a person of her age, education, work experience and residual functional capacity of light work is Rule 202.14.

Furthermore, the ALJ properly accepted the VE's testimony that plaintiff had transferable skills. Learned abilities, as opposed to innate abilities, are properly classified as "skills." *See Steiner v. Secretary of Health & Human Servs.*, 859 F.2d 1228, 1231-32 (6th Cir. 1987) (the ability to prepare reports and the acquired knowledge of law enforcement and detention regulations are properly classified as skills for purposes of a disability determination). Here, plaintiff's ability to keep accurate records, chart patient information and acquired social health care knowledge are learned abilities and may be classified as "skills." *See id.*

### 2. **Flawed hypothetical question**

Finally, plaintiff contends that the ALJ's hypothetical question did not include her problems with concentration (when she is in pain) and additional non-exertional impairments stemming from her depression and anxiety. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The ALJ concluded that plaintiff's mental problems (i.e., lack of concentration, depression and anxiety) caused no more than minimal limitations on her ability to perform basic

13

work activities (AR 20). For example, the ALJ observed that plaintiff's ability to read for long periods of time suggested that her pain was not so severe as to interfere with her ability to sustain concentration (AR 22). The ALJ also found that plaintiff engaged in a number of daily activities that "clearly reflect the ability to perform the limited work activities as found by the undersigned" (AR 22). Accordingly, the ALJ was not obliged to incorporate plaintiff's non-exertional complaints into the hypothetical question.

**IV.    Recommendation**

I respectfully recommend that the Commissioner's decision be affirmed.

Dated:  November 4, 2005           /s/ Hugh W. Brenneman, Jr.
                                   Hugh W. Brenneman, Jr.
                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).